## Gleim *against* Rise.

Although a tenant will not be permitted to gainsay the title of his landlord, yet if possession was not obtained from the landlord, but from another, who falsely represented himself to be the owner, it is competent for the tenant to show that the plaintiff was not the owner at the time the agreement to pay the rent was made, or liability to pay it accrued.

An acknowledgment of a subsisting debt, such as will take a case out of the operation of the statute of limitation, must be unqualified and unaccompanied by any intimation that it would not be paid.

ERROR to the common pleas of *Lebanon* county.

Adam Rise, for the use of his creditors, against Charles Gleim.

*Weidman,* for plaintiff in error.
*Pearson,* for defendant in error.

The case and circumstances of it are very fully stated in the opinion of the Court which was delivered by

HUSTON, J.—This was an action for the use and occupation of a house in Lebanon during part of the year 1827. The pleas were, that defendant did not assume, and did not assume within six years. The plaintiff proved by his son, that about two years before the time, (1837,) he was sent by his father to the defendant, to know whether it would be worth while for his father to come to Harrisburg to settle with the defendant—that it was about the rent he was sent to inquire. The defendant said in reply, that he need not trouble himself, that he would be down and settle with him; that he had made repairs and put a new roof on the kitchen.

The plaintiff also proved, that Flyn had occupied the house before Gleim, and had made a vendue, and the witness had bought some of the goods and left them still in the house; that Gleim forced open the door and moved in. That Gleim said, if he, the witness, would let him stay in the house, Gleim would pay for the goods; that witness agreed and Gleim paid for the

goods. Flyn had moved out of the house some time before and requested witness to take possession.

Defendant then offered to prove that Adam Rise had conveyed the houses in question to trustees for the use of his creditors; that they had accepted the trust and sold the house to Flyn, who had taken possession to the day Gleim took possession; this for the purpose of showing that Rise had no title to the property, and no consideration for a promise if any ever made, and to show that Rise could not sustain this suit. This was objected to, and rejected, and exception taken. The law is well settled, that where a person is in possession of property and leases it to another and puts him in possession, the tenant cannot object to the title of his lessor, who can recover for rent, or for use and occupation if no rent was agreed upon. Also, if the owner of property find another in possession who agrees to hold under him.

But the case is different where a man comes to one in possession of property and represents himself as the owner, though he in truth has no right to either the property or the possession, and under such representation obtains an agreement to pay rent, (or even a written lease, Hall *v.* Benner, 1 *Penn. Rep.* 402,) the person in possession is not estopped from showing that the pretended lessor had no title. The distinction is between a case where a lessor was in possession, and a lessee obtained possession under him, and a case where the person in possession did not obtain it from him who, under some false pretense, obtained the position of a lessor. In the first case the lessee cannot object to the title of him who put him into possession ; in the latter, he will be admitted to prove the imposition: if he does prove it, he is not bound to give up possession, nor is he liable for use and occupation. There was error in rejecting the testimony offered.

There was also an exception to the charge of the court as to the effect of the statute of limitations. The court said, " you will judge whether the defendants declaration to the plaintiff's son amounted to an acknowledgment that he then owed the plaintiff without any refusal to pay." If the plaintiff shall make out a better case on the next trial, or the defendant shall fail to prove what he offered, the effect of this law will become material. Courts in England had rendered this law inoperative, and these decisions were followed here. Some twenty years ago this court began to retrace its steps. In England the legislature have settled the matter by an act of parliament, that nothing but an actual promise in writing to pay a debt barred by this statute, shall prevent its operation. We have not gone so far; but our latest decisions say, that in order to take a case out of the operation of this act, it must be proved that the defendant admitted the debt to be still due, 3 *Penn.* 179; and if any declaration be made by the party at the time, inconsistent with a promise to pay, the court is bound to instruct the jury that there is not sufficient evidence from which to

[Gleim v. Rise.]

infer a new promise; 2 *Penn.* 301.    Here Gleim lived in the house
only six or seven months.    His saying he had made repairs and put
on a new roof, was as much like saying he owed nothing, as it
was to saying he admitted the rent was still due.    The same
words may in different circumstances bear very different meanings.
There was nothing improbable in supposing that a man who says
he will come and settle, believes that there is nothing due by him,
and had no idea that he was admitting himself to be in debt.  I would
not say the language of the judge was clearly erroneous, but I
would prefer that of Judge Rogers in 3 *Penn.* 179: " The acknow-
ledgment must go to the fact, that the debt is still due."

Judgment reversed, and *venire de novo* awarded.