McKinney, J.,
delivered the opinion of the court.
This was an action of ejectment brought in the Circuit Court of Rutherford, on the 19 th January, 1847. The lands described in the declaration were sold at execution sale on the 4th of March 1843, as the property of the defendant Elliott, by the Marshal of Middle Tennessee, to satisfy a judgment rendered in the Federal Court for the District of Middle Tennessee in favor of said Shultz, against said Elliott for $2,580 15, exclusive of costs. Shultz became the purchaser of said lands for the sum of $95 00. On the 6th of March, two days after the sale, the Marshal executed a deed to Shultz : and on the 30th of June 1843, the latter conveyed *184 the same to Thomas Hord for $4,000 00, as expressed in the deed. On the 13th of March 1843, a few days after the sale, Elliott, through his agent, took a lease of said lands, in writing under seal, from Erwin the agent of Shultz. And in said lease he stipulated to deliver possession at the end of the year 1843, to Shultz or his agent; and to pay $165 00, rent for said lands during said lease. The defendant failed to deliver possession at the termination of the lease, but retained possession claiming said lands adversely to Shultz.
The Mai’shal, in his return upon the execution, states that he gave “ due notice of the time and place of sale” of said lands to the defendant, who was in actual possession thereof: and in his deed to Shultz it is recited, that he had “ advertised and given notice according to law.” But his deposition was taken as evidence in the case, and he states therein, that he did not give the defendant twenty days written notice, as required by the statute, of the time and place of sale. An effort was made, on the part of the lessors of the plaintiff, to prove circumstances from which a presumption might arise that a notice had been left at the dwelling house of the defendant, in his absence, by some deputy Marshal; but the circumstances establish no sufficient foundation for any such presumption.
The main question on the trial in the Circuit Court seems to have been, whether the defendant — admitting no notice to have been given — had not estopped himself to question the validity of the execution sale, or the title of the lessors of the plaintiff, by taking a lease of the lands from Shultz, and thereby placing himself in the relation of tenant by positive contract.
There is proof in the record, that during the trial of a suit for forcible entry and detainer, brought by Elliott against one Robinson, in January 1844, Elliott claimed to hold the lands in controversy under Shultz. He said Cowan had rented the lands for him, and that the renting was for twelve months. It *185 is also proved by Erwin, the agent of Shultz, that between the time of the execution sale and February 1844, propositions for the redemption of said lands were made to him, by Cowan as the agent of Elliott. The declarations of Elliott were made evidence, showing that his understanding was that the lease would not expire until March 1844; and that Erwin had agreed that the land might be redeemed; and that such redemption might be made as well after, as within, the period of two years from the sale, as defendant understood the agreement : which agreement, defendant alledged, Erwin had violated.
The Circuit Judge properly instructed the jury, that if the notice required by the statute were not given to the defendant, the sale was utterly void. The jury were also correctly instructed — if we rightly comprehend the charge — that if the defendant, in renting, and in proposing to redeem said lands, from the agent of Shultz, acted in ignorance, or under a mistake of the facts, in respect to the notice, he would not be bound thereby. But the Court further instructed the jury, in substance, that if the defendant “ knew that, in fact, no written notice had been left at his house, in his absence : and also knew that he had never been served personally with the twenty days notice; but did not know that it was in his power to disprove the service of notice,” this would be such a mistake of the facts as that he would not be bound : or, although the defendant “ may not have been mistaken as to the facts, yet if he was mistaken as to his rights upon the facts, and made the agreements for renting and redemption under the mistake of his rights, he would not be bound.”
These two last propositions are certainly subject to criticism ; but as, in our view, they are of no great practical consequence, and not at all necessary to the decision of the cause, we will content ourselves with simply stating *186 the principles which must govern the determination of the case.
It is clear, that if notice were not given, as required by the act of 1799, ch. 14, sec. 1, the sale was a nullity; and the title remained unimpaired in Elliott. But the act does not require personal service of the notice, as we have recently held; service by leaving a copy at the dwelling house of the defendant, in his absence, will be sufficient.
If the defendant, Elliott, were induced to take a lease, or to propose a redemption, of the lands in question, from the agent of Shultz, under an impression, made by the Marshal’s return or otherwise, that probably there had been service of notice by leaving a copy at his house, in his absence, and without his knowledge, when in fact there had been no such service, as he afterwards ascertained, in such case, he would be under no estoppel to assert his own title, or to gainsay the supposed title of Shultz.
The rule which estops the tenant to question the title of his landlord, until after the relation is dissolved, is subject to various exceptions and qualifications, equally as important, and well established, as the rule itself. A plain mistake of the facts, constitutes one of these exceptions. The tenant is at liberty to show that he took a lease, or attorned to the landlord, under a mistake as to the true state of the title, and that the title was in himself, or out of the lessor. 2 Greenleaf’s Ev. sec. 305, 2 Hum. 562, 2 Johns, cases 353, 6 Watts, 44, 14 Serg. and R. 382, 1 Bing. R. 38, 6 Taunt. 202.
Fraud, or imposition, or undue advantage, is another exception to the rule. A tenant may impeach his landlord’s title whenever he can show that he was induced to take a lease by misrepresentation or fraud. 2. Greenleaf on Ev. sec. 305, and note 3, 14 Serg. and R. 382, 7 Ad. and E. 447.
A lease unfairly obtained from a party in possession of the land, will not prevent the lessee from contesting the title of *187 the lessor. 1 Rawle’s Rep. 408. So, he may show that he was deceived or imposed upon in making the agreement; 14 Johns. Rep. 224. Tillinghast’s Adams, 275 — 276 notes.
If, therefore, Elliott, the defendant were induced to accept the lease, or to propose to redeem the lands, by any fraud, misrepresentation, or artifice, on the part of Shultz, or of his agent, he will not be bound thereby.
If the lease were only a scheme to entrap Elliott, by placing him under a technical estoppel to resist the said sale, and he, in ignorance of, or under a mistake as to the facts upon which the invalidity of the sale depended, agreed to accept the lease, it will, have no binding effect. Or, if he were induced to accept the lease (being in doubt as to the validity of the sale) under a delusive expectation, excited by the promises, acts, or declarations of Shultz, or of his agent, that, by doing so, more favorable terms would be extended to him in the redemption of the land, when, in truth, no such favor was intended to be shown by Shultz or his agent, he would not be estopped.
This rule of estoppel, between landlord and tenant, is often extremely harsh and unjust in its operation, and is, therefore, not to be extended to cases to which it does not strictly apply. It applies only in cases where the conventional relation has been created by contract between the parties; and the propriety of its strict application might, perhaps, well be questioned in any case, where the tenant has not, in point of fact, received the actual possession of the premises from the lessor. In Cornish vs. Searell, (8 B. &. C. 471,) where A. being tenant to B. agreed to become tenant to sequestrators, under a sequestration against B. out of Chancery, it was held, that as the defendant had not received possession of the premises from the sequestrators, (who were the plaintiffs,) he might dispute their title. And in Washington vs. Conrad, (2 Hum. 562,) the doctrine is recognized, that where one does not obtain possession *188 of the premises from another, but being in possession, acknowledges his title, or attorns to him, he is not estopped from showing that he was mistaken in supposing the title to have been in such person.
It is certainly true, that one may be estopped by his deed to claim his own land, so long as such estoppel shall continue : thus it is said, “that the taking a lease by indenture of a man’s own land, whereof he is seised in fee, is an estoppel to claim the fee during the term. Moore’s cases, cited 1 Tomlin’s Law Dic. Estoppel, p. 674. In such case, the deed creates another estoppel, but it can only be operative during the continuance of the term stipulated in the indenture; and after the expiration thereof, the tenant in such case, just as much as in the case of a parol lease, may contest the lessor’s title upon either of the grounds above indicated. The lessee really having the title in himself, and not having been put in possession of the premises by the lessor, but having been previously in possession, claiming for himself, he is under no obligation to surrender possesion, in such case, before being entitled to contest the lessor’s title; but, upon the expiration of the term, is absolved from the technical estoppel under which, for a time, he had been placed by mistake or fraud, and likewise from all the consequences of such estoppel, and is remitted to his rights as they existed prior to the creation of such estoppel.
The result is, that for the erroneous instructions before noticed, the judgment must be reversed, and the cause be remanded for another trial.