# Minnie C. Ewing *v.* J. F. Cottman, Appellant.

*Evidence—Married woman—Lease.*

The execution by all parties of a lease, made by a married woman, having been proved, such lease is clearly admissible as the best evidence of the covenants of the parties.

In establishing her right to recover rent under a written lease a married woman is not required, in order to make the lease competent evidence, to produce any evidence which would not be necessary if she were unmarried.

*Practice, Superior Court—Defective assignments—Rules of court.*

Assignments of error relating to the rejection of evidence which do not quote the full substance of the bills of exception and do not refer to any exceptions cannot be considered by the appellate court in that they offend against Rule 17.

An assignment is defective and offends against Rule 16 which alleges error in the charge to the jury and does not quote the charge *totidem verbis.*

*Landlord and tenant—Disputes as to title.*

A case falls within the general principle which forbids a tenant to im-

peach his landlord's title where the lessor was in actual possession and the lessee accepted a lease under her, went into possession and was neither evicted nor disturbed in possession by any paramount title.

Argued Dec. 13, 1898.  Appeal, No. 56, Oct. T., 1898, by defendant, from judgment of C. P. No. 4, Phila. Co., March T., 1897, No. 103, on verdict for plaintiff.  Before RICE, P. J., ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit to recover arrears of rent from the surety on a lease.

The facts sufficiently appear in the opinion of the court.

Verdict and judgment for plaintiff for $854.72.  Defendant appealed.

*Errors assigned* were (1) in allowing the plaintiff to offer the lease in evidence as there was no proof that the plaintiff had the right to make said lease, she being a married woman and no testimony to show that it was her separate estate.  (2) In not allowing the defendant to prove that at the time the lease was signed that Mrs. Ewing represented herself to be the owner of the premises which she demised and also to prove that she was not in fact the owner of the property demised.  (3) In not allowing the defendant to prove that the representations made to the lessee on the question of title were false.  (4) In charging the jury as follows : " The defense set up is twofold in its character : first, that Mrs. Ewing did not own the property which she let to Miss Hobansack but as it does not appear that Miss Hobensack was expelled from the property by any body claiming a title paramount to that of Mrs. Ewing and as it seems that at the time of the execution of the lease Mrs. Ewing was in actual possession of the property you need not concern yourself with this phase of the case."  (5) In charging the jury as follows : " I will charge you as a matter of law that no amount of bad talk between Mrs. Ewing and the tenants there could amount to such an eviction as the law contemplates, as that which would excuse a tenant from paying rent unless it was such talk as was immediately connected with and forming part of an act of physical interference ; to call a woman a loose character in my judgment does not interfere with her en-

joyment of a house which she has leased, not to my mind, and I so charge you as a matter of law. (6) In charging the jury as follows: "However bad Mrs. Ewing's manners may have been, however bad her tongue was, I do not think that her miscalling Miss Hobensack or her abusing the three young ladies who have been referred to, to Miss Hobensack, or even her giving directions and instructions to Miss Hobensack's servants which they were at liberty to disregard had they seen fit to do so, and which so far as I recall the testimony, Miss Hobensack did not find fault with at the time, amount to such an interference with her possession there as would justify her in leaving the property and getting out." (7) In its charge to the jury. (8) The learned judge erred in submitting this case to the jury. (9) In allowing a judgment to be entered upon this verdict.

*John H. Fow,* for appellant.—Under the modern doctrine there was clearly an eviction in this case: Hoeveler v. Fleming, 91 Pa. 324; Doran v. Chase, 2 W. N. C. 609.

No paper-book or appearance for appellee.

OPINION BY W. D. PORTER, February 17, 1899:

The plaintiff, who was a married woman, kept a boarding house in the city of Philadelphia. On January 9, 1896, she entered into a written agreement with Ida M. Hobensack, leasing the house and furniture to the latter for one year, from January 15, 1896, at the annual rent of $900, payable in monthly instalments of $75.00, on the 15th of each month in advance, together with rooms and first class boarding for the plaintiff and her daughter. At the same time Cottman, the defendant, by agreement in writing became security for the performance of the covenants by lessee, waiving the necessity of first proceeding against the lessee and agreeing to pay in case of default.

The lessee took possession of the house and furniture and continued to use the same for purposes of a boarding house up to June 15, 1896, paying the rent to that date, when she moved out. This action is brought to recover from Cottman the rent for the remainder of the term.

The complaint of the first assignment of error is, that " the court erred in allowing the plaintiff to offer in evidence the lease, as there was no proof that the plaintiff had the right to make the lease, she being a married woman, and no testimony being presented to show that it was her separate estate." The execution of the lease by all the parties had been duly proved, as well as the fact that the lessee went into possession under the title of the lessor. The lease was, therefore, clearly admissible as the best evidence of the covenants of the parties. The first section of the Act of June 8, 1893, P. L. 344, enacts, that a married woman shall have the same right and power as an unmarried person, to acquire, lease, etc., property of any kind, real, personal or unmixed, and may exercise the said right and power in the same manner and to the same extent as an unmarried person.

In establishing her right to recover rent under a written lease a married woman is not required, in order to make the lease competent evidence, to produce any evidence which would not be necessary if she were unmarried. The first assignment is manifestly without foundation.

The second and third assignments relate to the rejection of evidence, and as they offered against Rule 17 in not quoting the full substance of the bills of exceptions and do not refer to any exceptions whatever, said assignments cannot be considered.

The fourth assignment of error is to the action of the court in withdrawing from the consideration of the jury the question of the ownership of the property by the lessor. In passing upon this question it must be borne in mind that the lessee did not obtain possession of the property through another than the lessor, and there is nothing to bring this case within the operation of the exception to the general rule declared in Hall v. Benner, 1 P. & W. 402, and Gleim v. Rise, 6 Watts, 44. The lessor was in actual possession of the property, the lessee accepted a lease from her and under said lease went into possession, the lessee was not evicted, nor was her possession disturbed by any title paramount to that of the lessor; if she turned herself out it was her own fault and no reason for refusing to pay the rent.

This case falls within the general principle which forbids a

tenant to impeach his landlord's title : Howard v. Murphy, 23 Pa. 173.

The fifth and sixth assignments relate to the language of the court in commenting on the sufficiency of evidence, as to language and conduct of the lessor, to warrant the jury in finding that the lessee had been deprived of the beneficial enjoyment of the demised premises, and these assignments may be considered together.

Under the terms of the lease the lessor had a right to remain in the house as a boarder; this right, however, was subject to the implied condition that it must be exercised in a reasonable and orderly manner. We are not prepared to announce as a general rule, that when a lessor remains upon the premises under such an agreement, "no amount of bad talk" between the lessor and the other boarders, "however bad the manners and tongue" of the lessor may have been, could amount to such an interference with the possession of the lessee as would justify her in leaving the demised premises. But the language used by the court is to be considered in connection with the evidence in the case, and when so considered it becomes apparent that the defendant was not thereby prejudiced. A careful consideration of the evidence reveals the fact that the only "bad talk" between the lessor and the other boarders, mentioned in the testimony, was confined to two occasions. Upon one occasion the lessee overheard an old gentleman, who boarded in the house, say to the lessor, "It is a gentleman to see Miss Hobensack," a gentleman having called at the front door. The lessor replied, "That is nothing new, she has gentlemen company every night in the week. She is a fast character." The parties talking did not know that any person was in position to hear what was said. There is no evidence that the lessee was injured, for the old gentleman, who was talking to the lessor, continued with his family to board at the house until the lessee vacated. The other occasion was when one of three young ladies who had a room over that of the lessor, asked her if she had heard the noise which they had made on a certain day, whereupon the lessor said, "I did, and it was not the first time." These three young ladies subsequently left the house ; but the lessee testified that she wanted them to leave, because she would rather have gentlemen in the house. The only additional

evidence of bad manners and the use of a "bad tongue" upon the part of the lessor, tends to establish the facts that she privately in reply to a question, told the lessee, the proprietress of the boarding house, that "the table was not first-class," and that when a dish she did not like was presented to her at the table she would put it aside. There is no direct evidence as to the correctness of the opinion expressed by the lessor that "the table was not first-class." The lessee testified with regard to the boarders, "They are all dead or gone to Australia." The only evidence of interference with the servants by the lessor, shows that she sometimes asked the girl, when the proprietress was not in the house, to go down and put coal on the heater. The court would have been justified, under the evidence, in withdrawing this branch of the defense from the consideration of the jury; the learned judge left the question to the jury, however, with the following instruction : "But, if from the mass of testimony, you recall any act testified to and proved to your satisfaction on the part of Mrs. Ewing, tending to prevent her tenant from enjoying to its full capacity the house which she had let to her, then such an eviction must be regarded as being established, and in that case your verdict would have to be for the defendant."

This certainly was all that defendant was entitled to under the evidence.

The seventh assignment offends against Rule 16, in not quoting the charge totidem verbis, and must fall.

The eighth and ninth assignments are without merit. If the court erred in submitting the case to the jury, the error was in favor of the defendant, and plaintiff was entitled to judgment on the verdict.

Judgment affirmed.